**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 20-cr-036-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    JORGE DE LA ROSA-CALDERON,
2.    **EMILIO JOSIAH DEHERRERA,**
3.    JANINE JANELLE DEHERRERA,
4.    ALEXZANDER BLAIR, and
5.    WESLEY PAPPAS,

    Defendants.

**ORDER DENYING EMILIO JOSIAH DEHERRERA'S MOTION TO SUPPRESS**

The Government charges Defendant Emilio DeHerrera with: (1) conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846; (2) distribution and possession with intent to distribute a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2; (3) distribution and possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii), and 18 U.S.C. § 2; (4) distribution and possession with intent to distribute a mixture and substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2; (5) distribution and possession with intent to distribute a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), in

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2; and (6) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  (ECF No. 38.)

Before the Court is DeHerrera's Motion to Suppress Statements and Evidence ("Motion"), filed on September 8, 2020.  (ECF No. 149.)  The Court finds that an evidentiary hearing is not necessary to resolve the Motion.  For the reasons set forth herein, the Motion is denied.

## I. FACTUAL FINDINGS

From the undisputed facts in the parties' briefs and exhibits thereto, the Court makes the following factual findings for purposes of deciding the Motion.

On February 5, 2020, DeHerrera, along with Janine Janelle DeHerrera, Jorge De La Rosa-Calderon, and Alexzander Blair were arrested following their sale of firearms to undercover agents.  (ECF No. 175 at 3.)

After his arrest, DeHerrera was interviewed at the Denver Police Department District 4 Station by Drug Enforcement Agency ("DEA") Special Agent Donahue, and Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agents Bazin and Johnson.[1]  (*Id.* at 3.)  Agent Donahue verbally advised DeHerrera of his *Miranda* rights.  (*Id.*; ECF No. 175-1 at 1:47.)  Thereafter, DeHerrera signed an Advice of Rights and Waiver, which stated the following:

---

[1] The Motion states that DeHerrera was interrogated on February 3, 2020.  (ECF No. 149 at 1.)  This interrogation actually occurred on February 5, 2020.  (ECF Nos. 175-2, 175-3.)  This date disparity does not affect the Court's analysis of the issues presented.

> **Statement of Rights**
>
> You have the right to remain silent.
>
> Anything you say can be used against you in court.
>
> You have the right to talk to a lawyer before we ask you any questions and to have a lawyer with you during questioning.
>
> If you cannot afford a lawyer, one will be appointed for you if you wish before any questioning begins.
>
> If you decide to answer any questions now without a lawyer present, you have the right to stop answering at any time.
>
> **Waiver**
>
> I have read this statement of my rights or it has been read to me, and I understand these rights. At this time I am willing to answer questions without a lawyer present. No promises or threats have been made to me, and no pressure or force of any kind has been used against me.

(ECF No. 175-2 at 1 (bold in original).) DeHerrera spoke with agents for approximately 51 minutes. (ECF No. 175-1.)

Agent Donahue also asked DeHerrera for his consent to search his cell phone to "corroborate" some of the information that DeHerrera would tell him. (ECF No. 149 at 3; ECF No. 175-1 at 3:47.) Agent Donahue verbally asked DeHerrera for consent to search his cell phone, which DeHerrera gave. (ECF No. 175-1 at 4:36.) DeHerrera then signed a Consent to Search form, which provided:

> I understand that I have a right to refuse to give my consent to a search and may demand that a search warrant be obtained prior to any search of the person or property described below.
>
> I understand that any contraband of a crime found during the search can be seized and used against me in any court of law or other proceeding.

> I understand that I may consult with an attorney before or
> during the search.
>
> I understand that I may withdraw my consent to this search
> at any time prior to the search's termination.
>
> This consent to search has been given voluntarily without
> promises, threats, coercion or force of any kind whatsoever.
>
> I have read the above statement of rights, understand these
> rights, and hereby authorize agents of the [ATF] to conduct
> a complete search of the property described below. . . .
> [DeHerrera's phone number] (LG Android Black).

(ECF No. 175-3 at 1.)

DeHerrera now seeks to suppress the statements he made during his February 5, 2020 interview, as well as evidence obtained from his cell phone. (ECF No. 149.)

## II. BURDEN OF PROOF

The Fourth Amendment to the U.S. Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." However, "[t]he Amendment says nothing about suppressing evidence obtained in violation of this command. That rule—the exclusionary rule—is a prudential doctrine created by th[e Supreme] Court to compel respect for the constitutional guaranty." *Davis v. United States*, 564 U.S. 229, 236 (2011) (internal citations and quotation marks omitted). Under the exclusionary rule, a defendant may move for suppression of evidence obtained in violation of the Fourth Amendment. *Id.*

It is undisputed that ATF agents did not have a search warrant when they searched DeHerrera's cell phone. On a motion to suppress evidence derived from a warrantless search and/or seizure, the defendant bears the burden of presenting a

*prima facie* case that the Fourth Amendment has been "implicated," at which point the burden shifts to the Government to prove "that its warrantless actions were justified (*i.e.*, as a lawful investigatory stop, or under some other exception to the warrant requirement)." *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994); *see also id.* at nn.1–2 (citing authorities).

DeHerrera has met this burden and demonstrated that his personal Fourth Amendment rights are implicated here. (*See generally* ECF No. 149.) He has therefore raised a *prima facie* case of a potential Fourth Amendment violation through a warrantless seizure and subsequent search, thus shifting the burden to the Government to justify its actions.

Additionally, where a *Miranda* violation is alleged and a defendant presents evidence or allegations sufficient to support a motion to suppress, "the Government must then carry the countervailing burden of proving a waiver of the constitutional privilege against self-incrimination." *United States v. Crocker*, 510 F.2d 1129, 1135 (10th Cir. 1975) (abrogated on other grounds by *United States v. Bustillos-Munoz*, 510 F.2d 1129 (10th Cir. 1975)). The Government bears the burden of proving by a preponderance of the evidence that a *Miranda* waiver was knowing and voluntary. *Colorado v. Connolly*, 479 U.S. 157, 168–69 (1986).

### III.  ANALYSIS

**A.     DeHerrera's Waiver of *Miranda* Warnings**

  1.     Legal Standards

"Waiver of one's Fifth Amendment privilege against self-incrimination requires that the individual 'voluntarily, knowingly and intelligently' waive his constitutional

privilege." *United States v. Morris*, 287 F.3d 985, 988 (10th Cir. 2002) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). This standard incorporates two distinct requirements:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Colorado v. Spring*, 479 U.S. 564, 573 (1987) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). This waiver inquiry "depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (internal quotation marks omitted). Relevant factors include: "(1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subjected to physical punishment." *United States v. Toles*, 297 F.3d 959, 966 (10th Cir. 2002).

"An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). However, such a statement "is not inevitably either necessary or sufficient to establish waiver." *Id.*

6

2.    Analysis

DeHerrera argues that his waiver of his *Miranda* rights was involuntary based on the "circumstances of his arrest" and the fact that he "has difficulty comprehending and understanding." (*Id.* at 2.) In his reply, DeHerrera explains that he has untreated attention deficit hyperactivity disorder ("ADHD"). (ECF No. 186 at 2.) He does not, however, explain the extent of his ADHD or provide any evidence by which the Court could evaluate his contention. Nor does he explain how his ADHD affected his ability to comprehend and understand the consequences of waiving his *Miranda* warnings on February 5, 2020.

The Court finds that DeHerrera's waiver of his privilege against self-incrimination was knowingly, voluntarily, and intelligently made and that his will was not "overborne" by the agents' actions.[2] At the time of the interview, DeHerrera was 21 years old. (ECF No. 175 at 5; ECF No. 175-1 at 6:54.) He confirmed that he can read and understand English, which is his primary language. (ECF No. 175-1 at 1:35–1:45.) Over the course of his 51-minute interview, DeHerrera spoke coherently, appeared to understand the agents' questions, and provided detailed, responsive answers. (*See generally* ECF No. 175-1.) Although DeHerrera cried at points during the interview, DeHerrera was not subjected to physical punishment or hostile questioning in which the agents raised their

---

[2] In his reply, DeHerrera argues for the first time that "[p]rior to the recording of Mr. DeHerrera's recorded statements, Mr. DeHerrera was presented with promises from Government officials" and was "presented with the Hobson choice of going to prison for an even longer period of time than he would if he did not talk to law enforcement authorities." (ECF No. 149 at 2.) By not raising this argument in his opening brief, DeHerrera has waived this argument. *See United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) ("[A]rguments raised for the first time in a reply brief are generally deemed waived.").

voices.  *Cf. Cardenas v. Hartley*, 448 F. App'x 826, 828 (10th Cir. 2011) (recognizing that defendant's statements were voluntary despite fact that defendant was intoxicated and distraught).

Moreover, the evidence does not suggest that DeHerrera was unaware of the nature of the Fifth Amendment rights that he was abandoning, or the potential consequences of waiving those rights.  *See United States v. Hernandez*, 913 F.2d 1506, 1510 (10th Cir. 1990) ("A suspect need not . . . understand the tactical advantage of remaining silent in order to effectuate a valid waiver.").  To the contrary, DeHerrera was given his *Miranda* rights orally and in writing, which informed him that he did not have to speak to the agents and that anything he said could be used against him.  (ECF No. 175-2; ECF No. 175-1 at 1:47.)  He then signed a waiver stating:

> I have read this statement of my rights or it has been read to me, and I understand these rights.  At this time I am willing to answer questions without a lawyer present.  No promises or threats have been made to me, and no pressure or force of any kind has been used against me.

(ECF No. 175-2.)  During the recording of the encounter, DeHerrera never asked the agents to stop the interview or otherwise objected to his continued participation.

Accordingly, a preponderance of the evidence shows that DeHerrera made an uncoerced choice to speak with the agents with the requisite level of comprehension.  The Court therefore finds that DeHerrera voluntarily, knowingly, and intelligently waived his privilege against self-incrimination and denies DeHerrera's request to suppress his post-*Miranda* statements.

**B.     Search of Cell Phone**

      1.     Consent Searches

A search authorized by consent is a well-recognized exception to the prohibition against warrantless searches. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The government official performing the search, not the individual subject to the search, has the burden of "proving that consent is given freely and voluntarily." *United States v. Jones*, 701 F.3d 1300, 1318 (10th Cir. 2012). Specifically, the Government has the burden of proving two elements: (1) the law enforcement officers must receive either express or implied consent, and (2) that consent must be freely and voluntarily given. *See id.* at 1317.

Whether consent was coerced, or was instead voluntary, is a fact-bound, totality-of-the-circumstances inquiry. *Schneckloth*, 412 U.S. at 227. Factors relating to this inquiry include "physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an aggressive tone, the physical and mental condition and capacity of the defendant, the number of officers on the scene, and the display of police weapons." *Eidson v. Owens*, 515 F.3d 1139, 1146 (10th Cir. 2008) (internal quotation marks omitted); *Jones*, 701 F.3d at 1318 (recognizing that "[w]hether an officer reads a defendant his *Miranda* rights, obtains consent pursuant to a claim of lawful authority, or informs a defendant of his or her right to refuse consent" are also factors used in considering whether consent was voluntary (quoting *United States v. Harrison*, 639 F.3d 1273, 1278 (10th Cir. 2011))).

      2.     Analysis

DeHerrera argues that his consent to search was not voluntarily given because

his "will was overborne" and "he did not understand the scope of the consent that he was giving with respect to his phone." (ECF No. 149 at 2.) In response, the Government argues that the totality of the circumstances demonstrate that DeHerrera voluntarily gave the ATF consent to search his cell phone. (ECF No. 175 at 6.) The Court agrees with the Government.

Although being detained during an investigation presents a scenario that is not wholly consensual, the Tenth Circuit has repeatedly found that "the fact of an investigative detention, standing alone, is not so coercive as to render the consent of all detained persons involuntary." *United States v. Olivares-Campos*, 276 F. App'x 816, 824 (10th Cir. 2008); *United States v. McRae*, 81 F.3d 1528, 1537 (10th Cir. 1996) ("A person who is being detained may still give a voluntary consent.").

Here, the Court has not been presented with any meaningful evidence suggesting that DeHerrera did not voluntarily give the ATF consent to search his phone. After reviewing the audio of DeHerrera's custodial interview, the Court finds that DeHerrera was not presented with threats, aggressive language or hostile questioning. (ECF No. 175-1.) Instead, after reading DeHerrera his *Miranda* rights, Agent Donahue gave DeHerrera a written Consent to Search form. Not only did DeHerrera provide his written and oral consent (ECF No. 175-1 at 4:36; ECF No. 175-3), but the written consent form explicitly stated that "[t]his consent to search has been given voluntarily without promises, threats, coercion or force of any kind whatsoever." (ECF No. 175-3.)

The Court also finds DeHerrera's argument that he did not understand the scope of his consent to be unavailing because there is no reasonable ambiguity about the scope of consent that Agent Donahue requested, or that DeHerrera provided. Prior to

obtaining DeHerrera's written consent, Agent Donahue advised DeHerrera that: (1) he wanted to search DeHerrera's phone to "corroborate" information that DeHerrera would tell him (ECF No. 175-1 at 3:47); (2) any contraband of a crime found during the search could be seized and used against DeHerrera in any court of law or other proceeding (ECF No. 175-3); and (3) DeHerrera had the right to refuse to give his consent and could withdraw his consent at any time prior to the search's termination (ECF No. 175-3).

Nonetheless, DeHerrera signed the Consent to Search Form, which "authorize[s] [ATF agents] to conduct a *complete* search" of DeHerrera's phone.[3]  (ECF No. 175-3 (emphasis added).)  He did not attempt to clarify the scope of the consent he was providing or ask what the ATF planned to search.  Although DeHerrera may regret his decision in retrospect, the evidence demonstrates DeHerrera's decision to give ATF consent to conduct a complete search of his cell phone was knowing and voluntary at the time.  *Cf. Connecticut v. Barrett*, 479 U.S. 523, 530 (1987) (recognizing that "[t]he fact that some might find [a defendant's] decision illogical is irrelevant, for we have never embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness" (internal quotation marks omitted)).

The Court therefore denies DeHerrera's request to suppress evidence derived from his cell phone.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS that DeHerrera's Motion to

---

[3] DeHerrera does not argue that the ATF's search of DeHerrera's cell phone exceeded the scope of his consent.  (ECF No. 149 at 2.)

Suppress Statements and Evidence (ECF No. 149) is DENIED.

Dated this 4th day of January, 2021.

BY THE COURT:

_____
William J. Martínez
United States District Judge